IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MEMORIAL SLOAN-KETTERING          )
CANCER CENTER,                    )
                                  )
              Plaintiff,          )
                                  )
         v.                       )          C.A. No. _____
                                  )
GENERAL ELECTRIC COMPANY,         )
GE HEALTHCARE TECHNOLOGIES INC.,  )
and GE MEDICAL SYSTEMS L.L.C.     )
                                  )
              Defendants.         )

**COMPLAINT**

Memorial Sloan-Kettering Cancer Center ("MSK") files this Complaint against General

Electric Company ("GE"), GE HealthCare Technologies Inc. ("GE HealthCare"), and GE Medical

Systems, L.L.C. ("GE Medical Systems") (collectively, "Defendants"). In support of its claims,

MSK alleges as follows:

**INTRODUCTION**

1.      This is an action for patent infringement arising under the patent laws of the United

States, 35 U.S.C. § 1, et seq. MSK seeks a judgment that Defendants have infringed and continue

to infringe U.S. Patent No. 9,814,431 (the "'431 Patent"); U.S. Patent No. 10,117,625 (the "'625

Patent"); U.S. Patent No. 10,448,903 (the "'903 Patent"); U.S. Patent No. 10,863,950 (the "'950

Patent"); U.S. Patent No. 11,369,322 (the "'322 Patent"); and U.S. Patent No. 12,171,593 (the

"'593 Patent") (collectively, the "Asserted Patents"), and an award of damages adequate to

compensate for Defendants' infringement.

2.      This action arises out of Defendants' manufacture, use, sale, offer to sell within the

United States, and/or importation into the United States, of Defendants' MotionFree device (also

known as "PET Digital Gating") and Defendants' positron emission tomography ("PET") and computed tomography ("CT") imaging systems and products incorporating MotionFree (collectively, the "Accused Products"), which practice methods and systems for retrospective internal gating covered by the Asserted Patents.

## THE PARTIES

3.      MSK is a not-for-profit corporation organized and existing under the laws of the State of New York, with its principal place of business at 1275 York Avenue, New York, New York 10065. MSK is one of the world's premier cancer research and treatment institutions.

4.      GE is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 1 Neumann Way, Evendale, OH 45215.

5.      GE HealthCare is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 500 West Monroe Street, Chicago, IL 60661. GE HealthCare completed a spin-off from GE on or about January 3, 2023.

6.      GE Medical Systems is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 3000 N. Grandview Blvd., Waukesha, WI 53188. GE Medical Systems was a subsidiary of GE and is now a subsidiary of GE HealthCare.

## JURISDICTION

7.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1, et seq.

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9.    This Court has personal jurisdiction over GE because GE regularly and continuously conducts business within Delaware and has committed acts of infringement in Delaware.

10.    This Court has personal jurisdiction over GE HealthCare because GE HealthCare is incorporated in Delaware, regularly and continuously conducts business within Delaware, and has committed acts of infringement in Delaware.

11.    This Court has personal jurisdiction over GE Medical Systems because GE Medical Systems is incorporated in Delaware and regularly and continuously conducts business within Delaware.

12.    Venue is proper in this Court pursuant to 28 U.S.C. § 1400(b). GE and GE HealthCare have committed acts of infringement in this district, including by making, using, selling, and/or offering to sell PET imaging systems incorporating MotionFree in this district. Further, GE HealthCare and GE Medical Systems are incorporated in Delaware, and GE has a regular and established business in Delaware, including a manufacturing site at 400 Bellevue Road, Newark, DE 19713. GE has also submitted to the jurisdiction of this Court in at least two other instances involving a claim of patent infringement. *See CAO Lighting, Inc. v. General Electric Company*, No. 20-681-GBW (D. Del.) (filed May 20, 2020); *CFL Technologies, Inc. v. General Electric Company and GE Lighting, Inc.*, No. 18-1444-RGA (D. Del.) (filed September 17, 2018).

## BACKGROUND

13.    MSK is one of the world's oldest and most respected comprehensive cancer centers. Founded in 1884, MSK has a long tradition of pioneering breakthroughs in the understanding, diagnosis, and treatment of cancer. MSK's research programs span a wide range of disciplines, including medical imaging.

14.     MSK's researchers have made significant contributions to the field of medical imaging, including the development of innovative methods and systems for improving the quality and accuracy of imaging data used in the diagnosis and treatment of cancer and other diseases.

15.     MSK invests heavily in its research programs and seeks patent protection for the inventions arising from those programs in order to advance its mission of research, education, and patient care. MSK licenses the rights to its patented inventions to companies that bring therapies and other products and services to market to ensure that its discoveries have the ability to help as many people as possible. MSK reinvests revenue generated from its licensing into further research activities to support its mission.

16.     MSK's patent portfolio includes the Asserted Patents. The Asserted Patents are directed to specific methods and systems for lessening image degradation caused by patient motion during image acquisition. Patient motion, including cardiac and respiratory motion, poses a significant problem for medical imaging: it causes blurring and loss of detail in the resulting images, which can limit the detectability of lesions and reduce the accuracy of measurements for visible lesions.

17.     Certain approaches for generating motion-corrected images utilize respiratory gating. Respiratory gating involves generating a respiratory signal (i.e., waveform or function) that represents a patient's breathing cycle over time and segregating data based on the respiratory signal to generate one or more motion-minimized images.

18.     Prior to the inventions claimed in the Asserted Patents, respiratory gating methods utilized various external monitoring devices to derive respiratory signals. Such devices included: pressure belts wrapped around a patient's chest or abdomen to measure respiratory expansion and contraction; cameras to track the movement of reflective markers placed on a patient's chest or

abdomen; and thermometers placed near the patient's nose or mouth to measure temperature differences between inhaled and exhaled air. These hardware-based approaches were often cumbersome and had a high failure rate.

19. The sole inventor of the Asserted Patents is Dr. Adam L. Kesner, an attending physicist in MSK's Department of Medical Physics who became interested in motion-corrected imaging as a graduate student in the Nuclear Medicine Department at UCLA. Dr. Kesner devised a novel approach for generating motion-corrected images that utilizes fluctuations in image data over time to derive motion signals. Dr. Kesner's use of image data to characterize patient motion over time enabled the generation of motion-corrected images that improve lesion detectability and diagnostic accuracy, and thus the effectiveness of patient treatment strategies, without external hardware and in a fully automated manner—a significant advance over prior art methods.

## THE ASSERTED PATENTS

20. United States Patent No. 9,814,431, entitled "Methods and Systems for Retrospective Internal Gating," issued on November 14, 2017. The '431 Patent lists Adam L. Kesner as the sole inventor. The '431 Patent was filed on May 5, 2008, as Application No. 12/151,121, and claims priority to U.S. Provisional Patent Application No. 60/916,200 (the "'200 Provisional Application"), filed on May 4, 2007. MSK owns by assignment the entire right, title, and interest in and to the '431 Patent. A true and correct copy of the '431 Patent is attached hereto as Exhibit A.

21. United States Patent No. 10,117,625, entitled "Methods and Systems for Retrospective Internal Gating," issued on November 6, 2018. The '625 Patent lists Adam L. Kesner as the sole inventor. The '625 Patent was filed on October 9, 2017, as Application No. 15/728,373, and is a continuation of Application No. 12/151,121 (now the '431 Patent). The '625

Patent claims priority to the '200 Provisional Application. MSK owns by assignment the entire right, title, and interest in and to the '625 Patent. A true and correct copy of the '625 Patent is attached hereto as Exhibit B.

22.     United States Patent No. 10,448,903, entitled "Methods and Systems for Retrospective Internal Gating," issued on October 22, 2019. The '903 Patent lists Adam L. Kesner as the sole inventor. The '903 Patent was filed on November 1, 2018, as Application No. 16/178,332, and is a continuation of Application No. 15/728,373 (now the '625 Patent). The '903 Patent claims priority to the '200 Provisional Application. MSK owns by assignment the entire right, title, and interest in and to the '903 Patent. A true and correct copy of the '903 Patent is attached hereto as Exhibit C.

23.     United States Patent No. 10,863,950, entitled "Methods and Systems for Retrospective Internal Gating," issued on December 15, 2020. The '950 Patent lists Adam L. Kesner as the sole inventor.  The '950 Patent was filed on April 25, 2019, as Application No. 16/395,201, and is a continuation of Application No. 16/178,332 (now the '903 Patent). The '950 Patent claims priority to the '200 Provisional Application. MSK owns by assignment the entire right, title, and interest in and to the '950 Patent. A true and correct copy of the '950 Patent is attached hereto as Exhibit D.

24.     United States Patent No. 11,369,322, entitled "Methods and Systems for Retrospective Internal Gating," issued on June 28, 2022. The '322 Patent lists Adam L. Kesner as the sole inventor. The '322 Patent was filed on December 14, 2020, as Application No. 17/120,579, and is a continuation of Application No. 16/395,201 (now the '950 Patent). The '322 Patent claims priority to the '200 Provisional Application. MSK owns by assignment the entire right, title, and

interest in and to the '322 Patent. A true and correct copy of the '322 Patent is attached hereto as Exhibit E.

25.     United States Patent No. 12,171,593, entitled "Methods and Systems for Retrospective Internal Gating," issued on December 24, 2024. The '593 Patent lists Adam L. Kesner as the sole inventor. The '593 Patent was filed on June 8, 2022, as Application No. 17/835,509, and is a continuation of Application No. 17/120,579 (now the '322 Patent). The '593 Patent claims priority to the '200 Provisional Application. MSK owns by assignment the entire right, title, and interest in and to the '593 Patent. A true and correct copy of the '593 Patent is attached hereto as Exhibit F.

## THE ACCUSED PRODUCTS

26.     Defendants have engaged in the manufacture, use, offer for sale, or sale within the United States, or importation into the United States, of products utilizing methods and systems of retrospective internal gating covered by the Asserted Patents, including, without limitation, the software device marketed under the trade name "MotionFree" and/or "PET Digital Gating" (hereinafter "MotionFree") and PET/CT imaging systems containing MotionFree. Further, Defendants' marketing of MotionFree knowingly encourages healthcare professionals to practice the retrospective internal gating methods covered by the Asserted Patents, and Defendants sell MotionFree devices with instructions for use that direct healthcare providers to infringe the Asserted Patents, knowing MotionFree is especially made or especially adapted for use in infringement and not a staple article or commodity of commerce suitable for substantial non-infringing use.

7

### A.    MotionFree

27.    In its 510(k) premarket approval submission to the U.S. Food and Drug Administration ("FDA"), GE Medical Systems stated that MotionFree is "intended to be used to detect and characterize respiratory motion using acquired PET coincidence data without the use of an external gating device." Letter from Robert Ochs, Ph.D., Dir., Div. of Radiological Health, Ctr. for Devices and Radiological Health, FDA, to Lee Bush, Regulatory Affairs Manager, GE Medical Systems (Feb. 2, 2018) (Re: K180318, 510(k) Premarket Notification—PET Digital Gating), at 5-3. It further stated that MotionFree "incorporates a principal components analysis (PCA) to compute the spatial-temporal variation of PET list data," which "can be used to automate motion correction of PET images with respiratory motion." *Id.* at 5-3 to 5-4.

28.    In June 2019, GE published a technical whitepaper stating that "[t]he MotionFree algorithm enables an automatic data analysis using collected PET coincidence events, i.e. 'list-mode' data, and, if the detected respiratory impact is above a configurable threshold, a respiratory waveform is derived from the PET list-mode data, and the waveform is used to derive per-cycle triggers," which "enable subsequent gated data processing." GE Healthcare, MotionFree: Device-less Digital Respiratory Gating in PET (June 2019) ("MotionFree Whitepaper"), at 4. Gated data processing may involve "the separation of the most quiescent portion of the acquired data" or the "generation of 4D Gated PET data," i.e., "[f]or each respiratory gate, a PET image volume is created." *Id.* at 3-4.

29.    The MotionFree Whitepaper further describes the MotionFree algorithm as a series of five steps:

> *Step 1*: Acquire PET coincidence events using Q.Static acquisition mode

*Step 2*: Generate reduced-dimension sinogram data

*Step 3*: Apply PCA, using the reduced dimension sinogram data as input, and extract three largest principal components and weight factors, i.e. 1D signals as a function of time, then determine correct phase and flip the waveform accordingly. These signals may represent respiratory motion.

*Step 4*: Apply Fast Fourier Transform (FFT) on the 1D signals. For each FFT, calculate the peak value within the respiratory frequency range (normal respiration is 2.5-10 sec period, or 0.1-0.4 Hz) and make a ratio of this peak value to the mean above this range. This ratio is a unitless index, "R", that represents the strength of the signal being respiratory-like, and it is used to determine whether the respiratory motion impact on the data is significant. The larger the number, the more the signal is respiratory-like and impactful, and vice versa.

*Step 5*: The 1D signal with the largest R value is then transformed back to the time domain. A peak detection algorithm is then applied to derive per-cycle triggers.

*Id.* at 5.

30.     The MotionFree Whitepaper explains that "PET sinograms are a representation of coincidence data that are used to form 4D input to PCA: coincidence data coordinates (r, θ, z) and changes over time (t), such that a correlation of motion with location in the patient is available." *Id.* at 4. The MotionFree Whitepaper further states that "PCA is used as a dimensionality reduction technique to derive the 1-D respiratory waveform directly from the data." *Id.*

31.     The MotionFree Whitepaper confirms that "MotionFree can be applied prospectively as well as retrospectively on any previously acquired scan without respiratory information recorded from a device, making respiratory motion management accessible at any time for any data." *Id.* at 1. The MotionFree Whitepaper further states that GE Healthcare "designed MotionFree to be able to retrospectively analyze acquired data (list-mode data of static acquisition for instance) and correct for motion." *Id.* at 8.

32.     In a virtual presentation given on December 17, 2020 at GE's symposium at the European Association of Nuclear Medicine's 33ʳᵈ Annual Congress, Professor Mark Lubberink stated that MotionFree "tries to find a breathing signal in the raw data using principal component analysis," and that, "if a waveform is found, quiescent-phase gating is performed, so a quiescent-phase image is reconstructed exactly as with external-device gating." Mark Lubberink, *EANM 2020 Virtual, GE Healthcare Symposium, Prof. Lubberink*, YouTube (GE HealthCare, Dec. 17, 2020), https://www.youtube.com/watch?v=dXs0dCpbrLc. Professor Lubberink further stated that MotionFree uses a method "presented by Theilemans and others in 2011." *Id.*

33.     Kris Filip Johan Jules Thielemans is an inventor on U.S. Patent No. 8,600,132 (the "'132 Patent"), filed on May 3, 2011 as Application No. 13/099,558. The '132 Patent issued on December 3, 2013, and it lists GE as the assignee. The '132 Patent is directed to "[a] method for reducing, in an image, motion related imaging artifacts [that] includes obtaining an image dataset of a region of interest, generating a plurality of intermediate images using the image dataset, applying a multivariate data analysis technique to the plurality of the intermediate images to generate motion information, sorting the intermediate images into a plurality of bins based on the motion information, and generating an image of the region of interest using at least one of the plurality of bins." '132 Patent, Abstract.

34.     MotionFree practices the steps outlined by Figure 2 of the '132 Patent:



FIG. 2

35.     The '132 Patent states: "At **104** [in Figure 2], the emission dataset **14** is utilized to generate a plurality of intermediate images **150** over time. In the exemplary embodiment, the intermediate images **150** are sinograms **150**." '132 Patent, col. 4, ll. 42-45.

36.     The '132 Patent states: "At **105** [in Figure 2], the sinograms **150** generated at **104** are preprocessed to obtain a corresponding set **151**. For example, the sinograms **150** may be preprocessed by 1) averaging over different elements of the sinograms (i.e. data-size and noise reduction) 2) removal of certain elements of the sinograms (e.g. by applying a mask where motion is expected to occur, or where the patient data contributes high spatial information, e.g. excluding regions with only accidental or scattered coincidences) 3) correction for known changes over time

11

(e.g. due to radioactive decay) 4) applying an element-wise operation on the data to convert data to approximately Gaussian distributed, preferably with uniform variance." *Id.* at col. 5, ll. 3-14.

37.     The '132 Patent states: "At **106** [in Figure 2], the sets of pre-processed sinograms **151***a* . . . **151***n* are utilized to generate time-average information **152**." *Id.* at col. 5, ll. 27-28. The '132 Patent further states: "at **106** [in Figure 2], average information **152** is generated for every element in every sinogram in **150***a*." *Id.* at col. 5, ll. 32-34.

38.     The '132 Patent states: "At **108** [in Figure 2], the average information **152**, for each set of sinograms **151***a*. . . **151***n*, is subtracted from the respective set of sinograms **150** to generate zero mean information [**154**] which is then input to the PCA." *Id.* at col. 5, ll. 52-55.

39.     The '132 Patent states: "At **110** [in Figure 2], the sets of sinograms **154** are then used as input for the PCA method." *Id.* at col. 5, ll. 61-62. The '132 Patent further states that the output of the PCA "is a number of eigenvectors (each corresponding to a set of sinograms of the same size as a set **154***a*) and their corresponding eigenvalues," and that "eigenvectors with the largest eigenvalue explain the largest variation (over time) in the sets of sinograms **154***a*. . . **154***n*." *Id.* at col. 5, l. 66-col. 6, l. 4. The '132 Patent further states: "It is possible and advisable to compute only the first few eigenvectors, as the eigenvectors with lowest eigenvalues correspond to noise in the data." *Id.* at col. 6, ll. 4-6.

40.     The '132 Patent states: "at **110** [in Figure 2], the zero mean information **154** generated for each set of sinograms **150** is utilized to generate one or more weight factors **156**." *Id.* at col. 6, ll. 35-37. "In the exemplary embodiment, the weight factor **156** is generated by doing an element-wise multiplication of the values of PC**1** with each of the sets of sinograms with the zero mean information **154***a* . . . **154***n*, and summing over the set of sinograms, thus obtaining a single number for each set of sinograms **154***a*, **154***b* . . . **154***n*." *Id.* at col. 6, ll. 43-48.

12

41.     The '132 Patent states: "at **112** [in Figure 2], the weight factors **156** derived at **110** are utilized to generate a motion signal **250**." *Id.* at col. 7, ll. 21-22. The '132 Patent describes an "exemplary motion signal . . . wherein the x-axis represents time and the y-axis represents the magnitude of the weight factors **156** derived at **110** for each set of sinograms." *Id.* at col. 7, ll. 23-26. The '132 Patent further states: "In one embodiment, the motion signal **250** is substantially the same as the weight factors **156**. In another embodiment, the motion signal **250** is obtained by filtering the weight factors **156**, to for example, reduce noise." *Id.* at col. 7, ll. 39-42.

42.     The '132 Patent states: "At **114** [in Figure 2], the emission dataset **14**, e.g. the sinograms **150**, is sorted into a plurality of bins **300** using the motion signal **250**." *Id.* at col. 7, ll. 43-44. The '132 Patent further states: "For example, FIG. **8** illustrates the exemplary motion signal **250** that is utilized to map the sinograms **150** into a plurality of bins **300**." *Id.* at col. 7, ll. 45-47. Figure 8 of the '132 Patent is reproduced below:



FIG. 8

43.     The '132 Patent states: "at **116** [in Figure 2], the 2D images stored in the bins **300**, **302**, **304**, **306**, **308**, and **310**, i.e., the motion corrected images, are averaged together to generate a single motion corrected image." *Id.* at col. 9, ll. 17-20.

44.     GE and GE HealthCare describe MotionFree as "the first-ever respiratory motion management solution that eliminates the need for a gating device." GE, *Discovery MI Gen 2* (2021); *Discovery IQ Gen 2*, GE HealthCare, https://www.gehealthcare.com/products/molecular-imaging/pet-ct/discovery-iq-gen-2 (last visited June 1, 2026). GE HealthCare further describes MotionFree as "the new standard for PET imaging and an essential tool for better outcomes." *Id.* GE and GE HealthCare claim that MotionFree results in "[u]p to a 67% improvement in lesion volume measurements" and "[u]p to a 30 percent improvement in quantitation accuracy" compared to non-motion-corrected data, and "a reduction in total scan time" by "up to 11 minutes" compared to device-based gating. *Id.*; GE, *Discovery MI Gen 2* (2021).

45.     The MotionFree Whitepaper also promotes the superiority of MotionFree over device-based methods. It states that MotionFree "does not require any pre-scan setup and post scan management" and "does not require visual monitoring during the scan to ensure that no failure in tracking or sensing the respiratory signal occurs, as can happen with device-based methods." MotionFree Whitepaper at 10. It further explains that MotionFree "leverage[s] the 4-dimensional information encompassed within the coincidence events to derive respiratory waveforms for the current [field of view]," which "makes it superior to a respiratory signal measured at a fixed patient location with respect to the thorax using a device-based approach." *Id.* at 1; *see also* GE HealthCare, MotionFree, https://www.gehealthcare.com/en-au/products/molecular-imaging/pet-ct/motion-free (last visited June 1, 2026) ("Whereas traditional gating devices track motion in a single location and direction at the surface of the body, MotionFree measures organ movement in three dimensions. That means it's aware of even the smallest movements, which is important because every patient has a unique breathing pattern.").

B.      **Defendants' PET/CT Systems Containing MotionFree**

46.     Defendants have and/or are continuing to manufacture, use, offer for sale, or sell within the United States, or import into the United States, several PET/CT imaging systems purporting to contain MotionFree, including Discovery IQ Gen 2, Discovery MI Gen 2, and Omni Legend.

1.      *Discovery IQ Gen 2*

47.     Discovery IQ Gen 2 is a PET/CT imaging system manufactured by GE Medical Systems that has been offered for sale and/or sold within the United States by GE and GE HealthCare. Discovery IQ Gen 2 has been manufactured, used, offered for sale, or sold within the United States, or imported into the United States, since at least June 24, 2019, when it was debuted at the Society of Nuclear Medicine and Molecular Imaging's annual meeting in Anaheim, California.

48.     GE HealthCare's webpage for Discovery IQ Gen 2 states that "Discovery IQ Gen 2 [] provides improvements to two core pillars of excellent PET/CT imaging - motion correction and quantitation accuracy." *Discovery IQ Gen 2*, GE HealthCare, https://www.gehealthcare.com/products/molecular-imaging/pet-ct/discovery-iq-gen-2 (last visited June 1, 2026). This webpage further states that, "[w]ith MotionFree, Discovery IQ Gen 2 assures that every patient gets the benefit of reduced motion during their exams." *Id.*

15

49.     GE HealthCare's webpage for Discovery IQ Gen 2 also highlights the improved clarity of MotionFree-generated images compared to "conventional static" images:



*Id.*

2.      *Discovery MI Gen 2*

50.     Discovery MI Gen 2 is a PET/CT imaging system manufactured by GE Medical Systems that has been offered for sale and/or sold within the United States by GE and GE HealthCare. Discovery MI Gen 2 has been manufactured, used, offered for sale, or sold within the United States, or imported into the United States, since at least November 29, 2020, when it was debuted at the virtual Radiological Society of North America's annual meeting.

51.     GE's brochure for Discovery MI Gen 2 states: "Discovery MI Gen 2 combines trusted Q.Clear quantitation and the proven clarity of MotionFree images with 30 centimeters of coverage, deep-learning based image reconstruction and a more efficient technologist experience." GE, *Discovery MI Gen 2* (2021).

16

52.     GE HealthCare's webpage for Discovery MI Gen 2 states: "Our goal is to expand your clinical perspective with up to 30 centimeters of coverage, system sensitivity of up to 30 cps/kBq, trusted Q.Clear quantitation, and the proven clarity of MotionFree images." *Discovery MI Gen 2*, GE HealthCare, https://www.gehealthcare.com/products/molecular-imaging/pet-ct/discovery-mi-gen-2 (last visited June 1, 2026).

### 3.     Omni Legend

53.     Omni Legend is a PET/CT imaging system manufactured by GE Medical Systems that has been offered for sale and/or sold within the United States and/or imported into the United States by GE and GE HealthCare. Omni Legend has been manufactured, used, offered for sale, or sold within the United States, or imported into the United States, since at least October 16, 2022, when it was debuted at the European Association of Nuclear Medicine's annual congress in Barcelona, Spain.

54.     GE's brochure for Omni Legend states: "We designed Omni Legend with theranostics in mind by utilizing ultra-high sensitivity, Q.Clear and MotionFree to help personalize dose as well as imaging $^{68}$Ga for diagnosis, staging or restaging." GE, *Omni Legend: Answers at the Speed of Sight* (2022). It further states that using MotionFree is "as simple as a touch of a button." *Id.*

55.     GE HealthCare's press release introducing Omni Legend states: "The capabilities of Omni Legend are [] elevated by the inclusion of . . . MotionFree, the company's proven, deviceless respiratory motion correction technology." Press Release, GE HealthCare, *GE Healthcare Introduces Omni Legend*: *A First-of-its-Kind All-Digital PET-CT System to Drive Efficiency, Enhance Diagnostics, and Deliver on Precision Medicine* (Oct. 16, 2022).

56.     GE HealthCare's webpage for Omni Legend likewise states: "Omni Legend takes the possibilities of Precision DL [(a deep learning image processing technology)] even further because it also includes Q.Clear image reconstruction technology (BSREM) and MotionFree, our proven, deviceless respiratory motion correction technology." *Omni Legend*, GE HealthCare, https://www.gehealthcare.com/products/molecular-imaging/pet-ct/omni-legend (last visited June 1, 2026).

57.     GE HealthCare's webpage for Omni Legend also highlights the improved clarity of motion-corrected images compared to images without motion correction:



*Id.*

## C.     Defendants' Knowledge of Asserted Patents

58.     GE has known of the '431 Patent, the '625 Patent, and the '903 Patent since at least November 6, 2019, when MSK and GE first corresponded regarding the Asserted Patents.

59.     GE HealthCare has known of the '431 Patent, the '625 Patent, the '903 Patent, the '950 Patent, and the '322 Patent since at least May 30, 2023, when MSK provided written notice

of the patents to GE HealthCare and informed GE HealthCare that the patents' claims cover the Accused Products.

60.   Defendants' infringement of the Asserted Patents is willful and deliberate. Defendants knew or should have known that making, importing, using, offering for sale, and/or selling the Accused Products constituted an unjustifiably high risk of infringement of the Asserted Patents. This action is therefore exceptional within the meaning of 35 U.S.C. § 285, entitling MSK to its attorneys' fees and expenses.

**COUNT I**
**(Infringement of the '431 Patent)**

61.   MSK realleges and incorporates by reference the allegations contained in the foregoing paragraphs 1 to 60.

62.   As provided in more detail below, each element of at least one claim of the '431 Patent is literally present in or practiced by the Accused Products. To the extent that any element is not literally present in or practiced by the Accused Products, each such element is present in or practiced by the Accused Products under the doctrine of equivalents.

63.   Exemplary Claim 1 of the '431 Patent recites:

1.   A method for retrospective internal gating comprising:

acquiring a series of images at times $t1 \ldots tn$;

extracting time-activity information for individual voxels;

prioritizing voxels for phase analysis, and assigning weighting factors;

applying frequency filter to voxel time-activity curves;

using prioritization, combining voxel time-activity information into a time varying object motion function;

> using the time varying object motion function for the mapping of image data to corresponding motion phases; and
>
> using the mapping of image data to corresponding motion phases to generate at least one motion corrected image.

64. The Accused Products use a method for retrospective internal gating, *see, e.g., supra*, ¶¶ 27-28, 31-33, 45, comprising: acquiring a series of images at times t**1** . . . tn, *see, e.g., supra* ¶ 29, 33-35; extracting time-activity information for individual voxels, *see, e.g., supra* ¶¶ 27-30, 34, 37-38; prioritizing voxels for phase analysis and assigning weighting factors, *see, e.g., supra* ¶¶ 29, 34, 36-39; applying frequency filter to voxel time-activity curves, *see, e.g., supra* ¶¶ 29, 34, 36-41; using prioritization, combining voxel time-activity information into a time varying object motion function, *see, e.g., supra* ¶¶ 29, 34, 36-41; using the time varying object motion function for the mapping of image data to corresponding motion phases, *see, e.g., supra* ¶¶ 28, 32-34, 42; and using the mapping of image data to corresponding motion phases to generate at least one motion corrected image, *see, e.g., supra* ¶¶ 27-28, 32-34, 42-43, 49, 51-52, 56-57. A non-limiting and exemplary claim chart further describing Defendants' infringement of Claim 1 of the '431 Patent is attached hereto as Exhibit G. This preliminary claim chart is not intended to limit MSK's right to modify the chart or to allege that Defendants' other activities infringe the exemplary claim or any other claim of the '431 Patent or any other patents.

65. Defendants have infringed and/or are continuing to infringe at least one claim of the '431 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling or offering to sell the Accused Products within the United States, and/or by importing the Accused Products into the United States, without authority. *See, e.g., supra* ¶¶ 27-57.

66.     Defendants have infringed and/or are continuing to infringe at least one claim of the '431 Patent pursuant to 35 U.S.C. § 271(b) by actively inducing the manufacture, use, sale, or offer for sale of the Accused Products within the United States or importation of the Accused Products into the United States. Defendants have caused and/or are continuing to cause end users to use the Accused Products with the knowledge and specific intent that such end users directly infringe MSK's '431 Patent. *See, e.g.*, *supra* ¶¶ 27-60.

67.     Defendants have infringed and/or are continuing to infringe at least one claim of the '431 Patent pursuant to 35 U.S.C. § 271(c) by selling or offering to sell the Accused Products within the United States, or importing the Accused Products into the United States, knowing the same to be especially made or especially adapted for use in infringement of MSK's '431 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use. *See, e.g.*, *supra* ¶¶ 27-60.

68.     Defendants have committed and/or continue to commit these acts of infringement without license or authorization.

69.     Defendants' infringement has damaged and will continue to damage MSK, which is entitled to recover damages adequate to compensate for Defendants' infringement in an amount to be determined at trial, and in any event no less than a reasonable royalty for the use made by Defendants of MSK's inventions.

70.     Defendants' infringement of the '431 Patent is willful and deliberate, entitling MSK to enhanced damages pursuant to 35 U.S.C. § 284. Defendants knew or should have known that their making, importing, using, offering for sale, and/or selling the Accused Products constituted an unjustifiably high risk of infringement of the '431 Patent.

**COUNT II**
**(Infringement of the '625 Patent)**

71.     MSK realleges and incorporates by reference the allegations contained in the foregoing paragraphs 1 to 60.

72.     As provided in more detail below, each element of at least one claim of the '625 Patent is literally present in or practiced by the Accused Products. To the extent that any element is not literally present in or practiced by the Accused Products, each such element is present in or practiced by the Accused Products under the doctrine of equivalents.

73.     Exemplary Claim 1 of the '625 Patent recites:

1.  A method for retrospective internal gating comprising:

    acquiring a series of images at times t1 . . . tn including a moving object;

    extracting time-activity information for voxels of the images;

    generating a time varying object motion function based on the extracted time-activity information for the voxels of the images;

    determining, using the time varying object motion function, phase information for motion of the moving object; and

    generating an updated series of images correcting for the motion of the moving object using the determined phase information for motion of the moving object.

74.     The Accused Products use a method for retrospective internal gating, *see, e.g., supra*, ¶¶ 27-28, 31-33, 45, comprising: acquiring a series of images at times t1 . . . tn including a moving object, *see, e.g., supra* ¶¶ 29, 33-35; extracting time-activity information for voxels of the images, *see, e.g., supra* ¶¶ 27-30, 34, 37-38; generating a time varying object motion function based on the extracted time-activity information for the voxels of the images, *see, e.g., supra* ¶¶ 39-41; determining, using the time varying object motion function, phase information for motion of

the moving object, *see, e.g.*, *supra* ¶¶ 28, 32-34, 42; and generating an updated series of images correcting for the motion of the moving object using the determined phase information for motion of the moving object, *see, e.g.*, *supra* ¶¶ 27-28, 32-34, 42-43, 49, 51-52, 56-57. A non-limiting and exemplary claim chart further describing Defendants' infringement of Claim 1 of the '625 Patent is attached hereto as Exhibit H. This preliminary claim chart is not intended to limit MSK's right to modify the chart or to allege that Defendants' other activities infringe the exemplary claim or any other claim of the '625 Patent or any other patents.

75.    Defendants have infringed and/or are continuing to infringe at least one claim of the '625 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling or offering to sell the Accused Products within the United States, and/or by importing the Accused Products into the United States, without authority. *See, e.g.*, *supra* ¶¶ 27-57.

76.    Defendants have infringed and/or are continuing to infringe at least one claim of the '625 Patent pursuant to 35 U.S.C. § 271(b) by actively inducing the manufacture, use, sale, or offer for sale of the Accused Products within the United States or importation of the Accused Products into the United States. Defendants have caused and/or are continuing to cause end users to use the Accused Products with the knowledge and specific intent that such end users directly infringe MSK's '625 Patent. *See, e.g.*, *supra* ¶¶ 27-60.

77.    Defendants have infringed and/or are continuing to infringe at least one claim of the '625 Patent pursuant to 35 U.S.C. § 271(c) by selling or offering to sell the Accused Products within the United States, or importing the Accused Products into the United States, knowing the same to be especially made or especially adapted for use in infringement of MSK's '625 Patent

23

and not a staple article or commodity of commerce suitable for substantial non-infringing use. *See, e.g., supra* ¶¶ 27-60.

78. Defendants have committed and/or continue to commit these acts of infringement without license or authorization.

79. Defendants' infringement has damaged and will continue to damage MSK, which is entitled to recover damages adequate to compensate for Defendants' infringement in an amount to be determined at trial, and in any event no less than a reasonable royalty for the use made by Defendants of MSK's inventions.

80. Defendants' infringement of the '625 Patent is willful and deliberate, entitling MSK to enhanced damages pursuant to 35 U.S.C. § 284. Defendants knew or should have known that their making, importing, using, offering for sale, and/or selling the Accused Products constituted an unjustifiably high risk of infringement of the '625 Patent.

**COUNT III**
**(Infringement of the '903 Patent)**

81. MSK realleges and incorporates by reference the allegations contained in the foregoing paragraphs 1 to 60.

82. As provided in more detail below, each element of at least one claim of the '903 Patent is literally present in or practiced by the Accused Products. To the extent that any element is not literally present in or practiced by the Accused Products, each such element is present in or practiced by the Accused Products under the doctrine of equivalents.

83. Exemplary Claim 1 of the '903 Patent recites:

1. A method for retrospective internal gating comprising:

    acquiring a series of images at times $t1 \ldots tn$ including a moving object;

24

extracting time-activity information for voxels of the images;

determining phase information for motion of the moving object based on the time-activity information for voxels of the images; and

generating an updated series of images correcting for the motion of the moving object using the determined phase information for motion of the moving object.

84. The Accused Products use a method for retrospective internal gating, *see, e.g., supra*, ¶¶ 27-28, 31-33, 45, comprising: acquiring a series of images at times t1 . . . tn including a moving object, *see, e.g., supra* ¶¶ 29, 33-35; extracting time-activity information for voxels of the images, *see, e.g., supra* ¶¶ 27-30, 34, 37-38; determining phase information for motion of the moving object based on the time-activity information for voxels of the images, *see, e.g., supra* ¶¶ 28, 32-34, 39-42; and generating an updated series of images correcting for the motion of the moving object using the determined phase information for motion of the moving object, *see, e.g., supra* ¶¶ 27-28, 32-34, 42-43, 49, 51-52, 56-57. A non-limiting and exemplary claim chart further describing Defendants' infringement of Claim 1 of the '903 Patent is attached hereto as Exhibit I. This preliminary claim chart is not intended to limit MSK's right to modify the chart or to allege that Defendants' other activities infringe the exemplary claim or any other claim of the '903 Patent or any other patents.

85. Defendants have infringed and/or are continuing to infringe at least one claim of the '903 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling or offering to sell the Accused Products within the United States, and/or by importing the Accused Products into the United States, without authority. *See, e.g., supra* ¶¶ 27-57.

86.    Defendants have infringed and/or are continuing to infringe at least one claim of the '903 Patent pursuant to 35 U.S.C. § 271(b) by actively inducing the manufacture, use, sale, or offer for sale of the Accused Products within the United States or importation of the Accused Products into the United States. Defendants have caused and/or are continuing to cause end users to use the Accused Products with the knowledge and specific intent that such end users directly infringe MSK's '903 Patent. *See, e.g.*, *supra* ¶¶ 27-60.

87.    Defendants have infringed and/or are continuing to infringe at least one claim of the '903 Patent pursuant to 35 U.S.C. § 271(c) by selling or offering to sell the Accused Products within the United States, or importing the Accused Products into the United States, knowing the same to be especially made or especially adapted for use in infringement of MSK's '903 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use. *See, e.g.*, *supra* ¶¶ 27-60.

88.    Defendants have committed and/or continue to commit these acts of infringement without license or authorization.

89.    Defendants' infringement has damaged and will continue to damage MSK, which is entitled to recover damages adequate to compensate for Defendants' infringement in an amount to be determined at trial, and in any event no less than a reasonable royalty for the use made by Defendants of MSK's inventions.

90.    Defendants' infringement of the '903 Patent is willful and deliberate, entitling MSK to enhanced damages pursuant to 35 U.S.C. § 284. Defendants knew or should have known that their making, importing, using, offering for sale, and/or selling the Accused Products constituted an unjustifiably high risk of infringement of the '903 Patent.

## COUNT IV
### (Infringement of the '950 Patent)

91.    MSK realleges and incorporates by reference the allegations contained in the foregoing paragraphs 1 to 60.

92.    As provided in more detail below, each element of at least one claim of the '950 Patent is literally present in or practiced by the Accused Products. To the extent that any element is not literally present in or practiced by the Accused Products, each such element is present in or practiced by the Accused Products under the doctrine of equivalents.

93.    Exemplary Claim 1 of the '950 Patent recites:

1.    A method for retrospective internal gating comprising:

acquiring image data corresponding to times $t1$ . . . $tn$ to be used to generate one or more images corresponding to a moving object;

extracting information for a plurality of arrays derived from the image data;

generating a time varying object motion function based on the extracted information for the plurality of arrays of the image data;

determining, using the time varying object motion function, phase information for motion of the moving object; and

generating at least one image correcting for the motion of the moving object using the determined phase information for motion of the moving object and the acquired image data.

94.    The Accused Products use a method for retrospective internal gating, *see, e.g., supra*, ¶¶ 27-28, 31-33, 45, comprising: acquiring image data corresponding to times $t1$ . . . $tn$ to be used to generate one or more images corresponding to a moving object, *see, e.g., supra* ¶¶ 27-30, 32-35, 42-43; extracting information for a plurality of arrays derived from the image data, *see,*

*e.g.*, *supra* ¶¶ 27-30, 34, 37-38; generating a time varying object motion function based on the extracted information for the plurality of arrays of the image data, *see, e.g.*, *supra* ¶¶ 39-41; determining, using the time varying object motion function, phase information for motion of the moving object, *see, e.g.*, *supra* ¶¶ 28, 32-34, 42; and generating at least one image correcting for the motion of the moving object using the determined phase information for motion of the moving object and the acquired image data, *see, e.g.*, *supra* ¶¶ 27-28, 32-34, 42-43, 49, 51-52, 56-57. A non-limiting and exemplary claim chart further describing Defendants' infringement of Claim 1 of the '950 Patent is attached hereto as Exhibit J. This preliminary claim chart is not intended to limit MSK's right to modify the chart or to allege that Defendants' other activities infringe the exemplary claim or any other claim of the '950 Patent or any other patents.

95.     Defendants have infringed and/or are continuing to infringe at least one claim of the '950 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling or offering to sell the Accused Products within the United States, and/or by importing the Accused Products into the United States, without authority. *See, e.g.*, *supra* ¶¶ 27-57.

96.     Defendants have infringed and/or are continuing to infringe at least one claim of the '950 Patent pursuant to 35 U.S.C. § 271(b) by actively inducing the manufacture, use, sale, or offer for sale of the Accused Products within the United States or importation of the Accused Products into the United States. Defendants have caused and/or are continuing to cause end users to use the Accused Products with the knowledge and specific intent that such end users directly infringe MSK's '950 Patent. *See, e.g.*, *supra* ¶¶ 27-60.

97.     Defendants have infringed and/or are continuing to infringe at least one claim of the '950 Patent pursuant to 35 U.S.C. § 271(c) by selling or offering to sell the Accused Products

within the United States, or importing the Accused Products into the United States, knowing the same to be especially made or especially adapted for use in infringement of MSK's '950 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use. *See, e.g.*, *supra* ¶¶ 27-60.

98.    Defendants have committed and/or continue to commit these acts of infringement without license or authorization.

99.    Defendants' infringement has damaged and will continue to damage MSK, which is entitled to recover damages adequate to compensate for Defendants' infringement in an amount to be determined at trial, and in any event no less than a reasonable royalty for the use made by Defendants of MSK's inventions.

100.    Defendants' infringement of the '950 Patent is willful and deliberate, entitling MSK to enhanced damages pursuant to 35 U.S.C. § 284. Defendants knew or should have known that their making, importing, using, offering for sale, and/or selling the Accused Products constituted an unjustifiably high risk of infringement of the '950 Patent.

**COUNT V**
**(Infringement of the '322 Patent)**

101.    MSK realleges and incorporates by reference the allegations contained in the foregoing paragraphs 1 to 60.

102.    As provided in more detail below, each element of at least one claim of the '322 Patent is literally present in or practiced by the Accused Products. To the extent that any element is not literally present in or practiced by the Accused Products, each such element is present in or practiced by the Accused Products under the doctrine of equivalents.

103.    Exemplary Claim 1 of the '322 Patent recites:

1.    A method for retrospective internal gating comprising:

acquiring image data corresponding to times t**1** . . . tn to be used to generate one or more images corresponding to a moving object;

extracting information for a plurality of arrays derived from the image data;

generating a time varying object motion function based on the extracted information for the plurality of arrays of the image data;

determining, based on the time varying object motion function, phase information for motion of the moving object; and

generating at least one image correcting for the motion of the moving object based on the determined phase information for motion of the moving object and the acquired image data.

104.    The Accused Products use a method for retrospective internal gating, *see, e.g.*, *supra*, ¶¶ 27-28, 31-33, 45, comprising: acquiring image data corresponding to times t1 . . . tn to be used to generate one or more images corresponding to a moving object, *see, e.g.*, *supra* ¶¶ 27-30, 32-35, 42-43; extracting information for a plurality of arrays derived from the image data, *see, e.g.*, *supra* ¶¶ 27-30, 34, 37-38; generating a time varying object motion function based on the extracted information for the plurality of arrays of the image data, *see, e.g.*, *supra* ¶¶ 39-41; determining, based on the time varying object motion function, phase information for motion of the moving object, *see, e.g.*, *supra* ¶¶ 28, 32-34, 42; and generating at least one image correcting for the motion of the moving object based on the determined phase information for motion of the moving object and the acquired image data, *see, e.g.*, *supra* ¶¶ 27-28, 32-34, 42-43, 49, 51-52, 56-57. A non-limiting and exemplary claim chart further describing Defendants' infringement of Claim 1 of the '322 Patent is attached hereto as Exhibit K. This preliminary claim chart is not

30

intended to limit MSK's right to modify the chart or to allege that Defendants' other activities infringe the exemplary claim or any other claim of the '322 Patent or any other patents.

105.    Defendants have infringed and/or are continuing to infringe at least one claim of the '322 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling or offering to sell the Accused Products within the United States, and/or by importing the Accused Products into the United States, without authority. *See, e.g.*, *supra* ¶¶ 27-57.

106.    Defendants have infringed and/or are continuing to infringe at least one claim of the '322 Patent pursuant to 35 U.S.C. § 271(b) by actively inducing the manufacture, use, sale, or offer for sale of the Accused Products within the United States or importation of the Accused Products into the United States. Defendants have caused and/or are continuing to cause end users to use the Accused Products with the knowledge and specific intent that such end users directly infringe MSK's '322 Patent. *See, e.g.*, *supra* ¶¶ 27-60.

107.    Defendants have infringed and/or are continuing to infringe at least one claim of the '322 Patent pursuant to 35 U.S.C. § 271(c) by selling or offering to sell the Accused Products within the United States, or importing the Accused Products into the United States, knowing the same to be especially made or especially adapted for use in infringement of MSK's '322 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use. *See, e.g.*, *supra* ¶¶ 27-60.

108.    Defendants have committed and/or continue to commit these acts of infringement without license or authorization.

109.    Defendants' infringement has damaged and will continue to damage MSK, which is entitled to recover damages adequate to compensate for Defendants' infringement in an amount

to be determined at trial, and in any event no less than a reasonable royalty for the use made by Defendants of MSK's inventions.

110.    Defendants' infringement of the '322 Patent is willful and deliberate, entitling MSK to enhanced damages pursuant to 35 U.S.C. § 284. Defendants knew or should have known that their making, importing, using, offering for sale, and/or selling the Accused Products constituted an unjustifiably high risk of infringement of the '322 Patent.

## COUNT VI
### (Infringement of the '593 Patent)

111.    MSK realleges and incorporates by reference the allegations contained in the foregoing paragraphs 1 to 60.

112.    As provided in more detail below, each element of at least one claim of the '593 Patent is literally present in or practiced by the Accused Products. To the extent that any element is not literally present in or practiced by the Accused Products, each such element is present in or practiced by the Accused Products under the doctrine of equivalents.

113.    Exemplary Claim 1 of the '593 Patent recites:

> 1.  A method for retrospective internal gating, the method comprising:
>
> acquiring image data corresponding to successive digital images $i_1$ to $i_n$ to obtain a chronologically ordered image set with temporally cyclical signals corresponding to periodic motion of a moving object;
>
> extracting information for a plurality of arrays corresponding to one or more voxels in the successive images $i_1$ to $i_n$;
>
> generating a time varying object motion function based on the extracted information for the plurality of arrays of the image data;

determining, based on the time varying object motion function, phase information for the periodic motion of the moving object; and

generating at least one image correcting for the periodic motion of the moving object based on the acquired image data and the determined phase information for the periodic motion of the moving object.

114.    The Accused Products use a method for retrospective internal gating, *see, e.g., supra*, ¶¶ 27-28, 31-33, 45, comprising: acquiring image data corresponding to successive digital images $i_1$ to $i_n$ to obtain a chronologically ordered image set with temporally cyclical signals corresponding to periodic motion of a moving object, *see, e.g., supra* ¶¶ 27-30, 35; extracting information for a plurality of arrays corresponding to one or more voxels in the successive images $i_1$ to $i_n$, *see, e.g., supra* ¶¶ 27-30, 34, 37-38; generating a time varying object motion function based on the extracted information for the plurality of arrays of the image data, *see, e.g., supra* ¶¶ 39-41; determining, based on the time varying object motion function, phase information for the periodic motion of the moving object, *see, e.g., supra* ¶¶ 28, 32-34, 42; and generating at least one image correcting for the periodic motion of the moving object based on the acquired image data and the determined phase information for the periodic motion of the moving object, *see, e.g., supra* ¶¶ 27-28, 32-34, 42-43, 49, 51-52, 56-57. A non-limiting and exemplary claim chart further describing Defendants' infringement of Claim 1 of the '593 Patent is attached hereto as Exhibit L. This preliminary claim chart is not intended to limit MSK's right to modify the chart or to allege that Defendants' other activities infringe the exemplary claim or any other claim of the '593 Patent or any other patents.

115.    Defendants have infringed and/or are continuing to infringe at least one claim of the '593 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by

making, using, selling or offering to sell the Accused Products within the United States, and/or by importing the Accused Products into the United States, without authority. *See, e.g.*, *supra* ¶¶ 27-57.

116.    Defendants have infringed and/or are continuing to infringe at least one claim of the '593 Patent pursuant to 35 U.S.C. § 271(b) by actively inducing the manufacture, use, sale, or offer for sale of the Accused Products within the United States or importation of the Accused Products into the United States. Defendants have caused and/or are continuing to cause end users to use the Accused Products with the knowledge and specific intent that such end users directly infringe MSK's '593 Patent. *See, e.g.*, *supra* ¶¶ 27-60.

117.    Defendants have infringed and/or are continuing to infringe at least one claim of the '593 Patent pursuant to 35 U.S.C. § 271(c) by selling or offering to sell the Accused Products within the United States, or importing the Accused Products into the United States, knowing the same to be especially made or especially adapted for use in infringement of MSK's '593 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use. *See, e.g.*, *supra* ¶¶ 27-60.

118.    Defendants have committed and/or continue to commit these acts of infringement without license or authorization.

119.    Defendants' infringement has damaged and will continue to damage MSK, which is entitled to recover damages adequate to compensate for Defendants' infringement in an amount to be determined at trial, and in any event no less than a reasonable royalty for the use made by Defendants of MSK's inventions.

120.    Defendants' infringement of the '593 Patent is willful and deliberate, entitling MSK to enhanced damages pursuant to 35 U.S.C. § 284. Defendants knew or should have known that

34

their making, importing, using, offering for sale, and/or selling the Accused Products constituted an unjustifiably high risk of infringement of the '593 Patent.

## PRAYERS FOR RELIEF

WHEREFORE, MSK respectfully requests that this Court:

a. Enter judgment that Defendants have infringed the Asserted Patents;

b. Award damages adequate to compensate Memorial Sloan-Kettering for Defendants' infringement together with pre-judgment and post-judgment interest and costs under 35 U.S.C. § 284;

c. Award treble damages for Defendants' willful infringement;

d. Enter judgment that this case is exceptional and award MSK its reasonable attorneys' fees, costs, and expenses, under 35 U.S.C. § 285; and

e. Award such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, MSK hereby demands a jury trial as to all issues so triable.

ASHBY & GEDDES

*Of Counsel:*                                           */s/ Andrew C. Mayo*

Peter A. Sullivan                                      Andrew C. Mayo (#5207)
FOLEY HOAG LLP                                         500 Delaware Ave., 8th Floor
1301 Avenue of the Americas                            P.O. Box 1150
25th Floor                                             Wilmington, DE 19899
New York, NY 10019                                     (302) 654-1888
Phone: 212.812.0400                                    amayo@ashbygeddes.com
Fax: 212.812.0399
psullivan@foleyhoag.com                                *Attorneys for Plaintiff Memorial Sloan-*
                                                       *Kettering Cancer Center*

Spenser C. Angel
FOLEY HOAG LLP
Seaport West, 155 Seaport Blvd.
16th Floor
Boston, MA 02210-2600
Phone: 617.832.1000
Fax: 617.832.7000
sangel@foleyhoag.com

Dated: June 1, 2026